**In re Petition of Leonard A. HANSON, for Reinstatement to the Practice of Law in the State of Minnesota.**

**No. C6–60–37101.**

Supreme Court of Minnesota.

May 11, 1990.

Leonard A. Hanson, Torrance, Cal., pro se.

William J. Wernz, Director of Lawyers' Professional Responsibility Bd., Betty M. Shaw, Sr. Asst. Director, St. Paul, for respondent.

PER CURIAM.

Leonard A. Hanson, a disbarred attorney, now 76 years of age, applied for reinstatement to the practice of law in Minnesota. A panel of the Board of Lawyers Professional Responsibility on November 7, 1989, recommended against reinstatement after conducting a hearing pursuant to Rule 18, Rules on Lawyers Professional Responsibility (RLPR). The panel found that petitioner had not demonstrated a fundamental change in moral character and

did not have the legal skills required of an active practitioner. Petitioner waived a further hearing before a referee and requested briefing and oral argument before this court. After reviewing the files and briefs and hearing oral arguments, we agree with the panel's assessment as to competence and accordingly must deny the petition.

This court disbarred petitioner in 1960 for several violations of attorney discipline. *In re Hanson*, 258 Minn. 231, 103 N.W.2d 863 (1960). Most significantly, petitioner used his powers as a general guardian of an incompetent ward to withdraw and convert to his own use over $21,600 from the ward's accounts. Petitioner has since made restitution for this misappropriation. Petitioner breached his fiduciary obligations to other clients through failure to remit funds on behalf of or due to clients. He also committed two instances of forgery, wrote two insufficient funds checks not involving clients, and committed two instances of neglect of client matters. At the time of his misconduct petitioner was over 40 years of age and had practiced for five or six years.

Petitioner and his family moved to California in 1957, after the misconduct but before being disbarred. He worked as an appraiser for the federal government for over 24 years until his retirement in 1983. Petitioner has been involved in civic and church groups, and according to his own testimony and that of his son, he lived a lawful and moral life. Petitioner has not practiced law for 35 years. He took 45 credits of continuing legal education in 1988, and stated to this court that he recently completed 37.5 additional credits. He and his wife still reside in California.

Mr. Hanson seeks active reinstatement to the practice of law, subject only to bringing his continuing legal education (CLE) credits current. Both before the panel and before this court, he has rejected restricted or permanent retirement status.

Disbarred attorneys may be reinstated under Rule 18, Rules on Lawyers Professional Responsibility (RLPR). In applying for reinstatement an applicant must establish by clear and convincing evidence that she or he has "undergone such a moral change as now to render him a fit person to enjoy the public confidence and trust once forfeited." *In re Swanson*, 343 N.W.2d 662, 664 (Minn.1984) (quoting *In re Smith*, 220 Minn. 197, 201, 19 N.W.2d 324, 326 (1945)) [hereinafter *Swanson I*]. Evidence of a moral change "must come not only from an observed record of appropriate conduct, but from the petitioner's own state of mind and his values." *In re Swanson*, 405 N.W.2d 892, 893 (Minn.1987) [hereinafter *Swanson II*]. This high standard of proof is required because this court must be assured that reinstatement would serve the public interest. *In re Herman*, 293 Minn. 472, 476, 197 N.W.2d 241, 244 (1972).

The court also considers the seriousness of the offenses which originally caused the disbarment, the length of time since the misconduct, the presence of physical or mental illness susceptible to change and the intellectual qualifications of the applicant. *Swanson I*, 343 N.W.2d at 664; *In re Strand*, 259 Minn. 379, 380, 107 N.W.2d 518, 519 (1961).

Petitioner's evidence of a moral change consists primarily of his own testimony, and that of his son. His son stated that his father's conduct since disbarment was exemplary. Petitioner claims that he prevented criminal activity in his work place on several occasions, but provides no proof. He has been active in church, civic and union organizations. Petitioner also introduced letters of recommendation from a business associate and the pastor of his church. The pastor states that he has known petitioner for seven years, petitioner has served in positions of trust within the congregation, and that to his knowledge petitioner is "a person of high ethical standards."

The panel found that he had not met his burden of proving a moral change. In particular, the panel noted that he had not articulated the difference between his past and present attitudes which would ensure that he would not engage in misconduct again. It is not entirely clear whether petitioner's state of mind and values show mor-

al change. *Swanson II*, 405 N.W.2d at 893. His brief to this court is full of remorse for his misconduct. His petition, however, while it acknowledged (unarticulated) "mistakes," also alleged that the disbarment hearing was unfair. He stated that he was the victim of "false statements, the inactivity of my attorney, and the inclusion of unproved and unprovable allegations." In testimony before the panel, he acknowledged that he had acted dishonestly, and to some extent retracted his claims of unfair treatment. In his argument before this court, he acknowledged that he had not been "the most ethical and honest attorney," but did not articulate clearly moral change.

The misconduct in this case was serious, especially the conversion of over $21,600 from an incompetent client. *In re Strid*, 439 N.W.2d 721, 721 (Minn.1989). Petitioner did not suffer from any physical or psychological illness or pressures subject to correction, which the court has considered in mitigation. *See In re Wegner*, 417 N.W.2d 97, 100 (Minn.1987).

Nonetheless, petitioner's testimony, that of his son, and the letters he provided, indicated that he has lived the past 33 years in California in a productive and ethical way. Further, the distance may well have made it difficult to provide other proof, such as character witnesses.

■ Whether or not petitioner established a moral change, he has not demonstrated that he is competent to practice law. The panel concluded that petitioner lacked "necessary legal skills and competency to justify unrestricted reinstatement."

When an attorney has been away from the profession for an extensive period, we recognize that it could be difficult for him or her to demonstrate competence. "[I]t might be advisable for [the petitioner] to make a showing of some systematic effort to familiarize himself with current legal practice. However, there are no definite or formal standards established, and each case must be determined on the basis of a judgement as to the individual involved." *Strand*, 259 Minn. at 381, 107 N.W.2d at 519.

Petitioner returned to Minnesota and took three CLE courses in 1988, and states that he has recently taken five additional courses. None of these courses was in the area of real property, which is the area in which he proposes to practice if he returns to Minnesota. In 1986 he was appointed personal representative for his brother's estate, and the attorney for the estate commended him for his work.

None of these activities adequately demonstrates his ability to practice law after such a long hiatus. "Ours * * * is the burden of assuring the public that, if petitioner were today reinstated as an attorney, clients could submit their most intimate and important affairs to him with complete confidence in both his competence and fidelity." *Herman*, 293 Minn. at 476, 197 N.W.2d at 244.

On two occasions, this court has allowed reinstatement of attorneys over 70 years of age, which the Director describes as "humanitarian" reinstatements. *Strand*, 259 Minn. at 381, 107 N.W.2d at 520; *In re Lindquist*, 310 Minn. 558, 559, 246 N.W.2d 35, 36 (1976). In *Strand*, the referee recommended that the petitioner be reinstated and this court found the petitioner intellectually and morally fit. In *Lindquist*, an attorney who was well respected for his legal ability was disbarred during World War II for failing to report for induction in the United States Army. He served several years in prison before receiving a full pardon from the President of the United States in 1947. Following the war, he devoted much of his adult life to missionary work in Brazil and Mexico. The court granted reinstatement with *retired status*.

Mr. Hanson insists that he must be returned to active practice, subject only to bringing his CLE requirements current. He rejects the possibility of a permanent retirement status. Since we cannot assure the citizens of this state that petitioner is competent to practice, his petition for reinstatement is denied.